351

In the Interest of R. R. P., a child under
17 years of age, Appellant.

No. 37812.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Nov. 23, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Dec. 20, 1976.

Application to Transfer Denied
Feb. 14, 1977.

Robert C. Babione, Public Defender, Robert G. O'Blennis, Asst. Public Defender, St. Louis, for appellant.

Joan M. Burger, Patricia Karman, St. Louis, for respondent.

SIMEONE, Judge.

This is an appeal from an order of the Juvenile Court entered on October 14, 1975, finding that appellant, R.R.P., came within the jurisdiction of the juvenile court under the provisions of § 211.031(1)(c) and (d), RSMo, in that he was found to be an accessory after the fact of the offense of attempted robbery. He urges two points on this appeal and prays that the cause be reversed and remanded for a new adjudicatory hearing. For reasons hereinafter stated, we affirm.

This proceeding began with the filing of a petition by the juvenile officer, alleging that R.R.P. came within the provisions of § 211.031(1)(c) and (d) for the reason that on September 25, 1975, he "feloniously, unlawfully, and willfully" attempted to "rob, steal, take and carry away the personal property of John Chapman." Other allegations sufficient to charge attempted robbery were also made. The petition informed the juvenile that he acted "contrary to Section 560.120 [robbery in the first de-

gree], and 556.150 [attempt] Missouri Revised Statutes." The petition prayed that the court inquire into the matter and make such orders as required. An attorney was appointed for R.R.P. and eventually an adjudicatory hearing was held before a commissioner.

At the hearing, the victim, John Darryl Chapman, a young man of twenty, testified that at about 7:30 in the evening on September 25, 1975, he was walking home having "cut through" Tower Grove Park and while on Arsenal Street "[t]hree people [males] jumped me and asked me for my money." One was tall and two were short. One was also "kinda fat." "They asked me for ten dollars and I told them I didn't have it." Chapman testified that R.R.P. asked him for money. All three of them then wanted to start a fight. Chapman walked away and went into a nearby alley. In the alley they started to chase him, caught him, and two of them knocked him down and "tried to go in my pocket." When he was on the ground, "[t]his one kicked me," referring to the appellant, R.R.P. Chapman also testified that on that evening R.R.P. was wearing a "[b]lue knited [sic] cap and orange tea [sic] shirt." Chapman said R.R.P. kicked him "twice." No property was taken and Chapman was not injured. Chapman ran, went home, rested for awhile, went "back out" and "flagged down" a police officer. Chapman gave a description of the three males and indicated that one was a "[t]all male, [wearing a] blue cap, orange shirt." On cross-examination Chapman first stated that he got a "good look" at appellant's face, but then indicated that he identified him by the clothes he was wearing. But on re-direct he again stated that R.R.P. kicked him twice and that R.R.P. was very close to him and he "got a look at his face." He recognized him from "his face, as well as his clothes."

After Chapman informed the police of the events, Officer Allen C. Morris of the Metropolitan Police received a "description placed on the air of three subjects wanted for an attempted robbery. . . ." The officer was in his patrol car and observed a

person, later identified as R.R.P., standing in front of a supermarket near the place where the assault occurred. The youth was wearing a "blue knit type cap and a[n] orange tea [sic] shirt, and dark trousers." The officer made a U-turn; R.R.P. entered the store and walked to the rear. The officer got out of the car and followed him. He apprehended the appellant, informed him that a "description was placed out on the air, and that he matched the description of the subject wanted for assault and attempt[ed] robbery." Appellant was placed in the rear of the patrol car together with another person who was also detained for the offense. Officer Morris requested that the victim, Chapman, be brought to the scene for "identification of the suspect." When Chapman arrived, he identified R.R.P. who was then wearing a blue knit cap and an orange T-shirt. Chapman could not identify the other person who was detained; hence, he was released. Chapman, in his testimony, "[o]nly knew one of them" in the police car and that was R.R.P.

At the adjudicatory hearing R.R.P. testified in his own behalf. He admitted being with two other persons that evening on Grand Avenue. He stated he was with "Robert D— and a kid named Steve." When Chapman came out of the park, "Robert told Steve that he [Chapman] had ten dollars, and to go and get him . .." The two ran across the street, and Steve "ran and kicked him. That's when he [Chapman] went in the alley and Robert, and Steve went in the alley. I stayed on Grand." After that, R.R.P. saw Robert run out of the alley and he and Robert "ran up Grand" and "walked back down." It was at that point that "Robert D— said he was cold becuase [sic] he had a short sleeve shirt on, and I [R.R.P.] changed clothes with him . . .." When appellant saw Officer Morris make the U-turn, he stated that "I realized that's why Robert wanted to change clothes with me, so I got scared, and went in the A & P when he got me." It was R.R.P.'s testimony that he was not wearing a blue cap and orange T-shirt but rather was wearing a blue jean jacket and that he traded clothes with Robert because

Robert was cold. The officer apprehended R.R.P. and Robert, placed them in the rear of the patrol car, and Chapman identified R.R.P. but could not identify Robert. Robert was released, but R.R.P. was held.

On cross-examination, R.R.P. admitted he had a "pretty good idea" what Robert and Steve were up to when they ran in the alley, and admitted that even though he knew that Robert "had possibly beat up or robbed John Chapman" he still traded clothes with him. He admitted that when identified by Chapman he did not inform the police that he was not wearing his own clothes, but did so at the district station. While at the district station the officer made a phone call to R.R.P.'s mother who informed him that he had been wearing a blue jean jacket.

At the end of the adjudicatory hearing, the court announced:

"Based on the testimony offered . . it is the finding of the Commissioner that the juvenile comes within the provisions of subdivision C & D of paragraph 1 of section 211.031 . . . and finds this beyond a reasonable doubt by reason of being an accessory after the fact of—"

At that point defense counsel interrupted and the following occurred:

[Defense Counsel]: "—I don't think you can find him guilty of anything—anything other than what was found. That would be for the Court of Appeals to decide."

THE COURT: "That's exactly the situation. I'm not so sure I don't agree with you . . . Certainly the articles of adult law would definitely agree with you. I find it difficult, within the context of these facts, to acquit your client, and it seems the best way to deal with your client is to deal with your client on the basis of what he says he's responsible for; which is accessory after the fact of assault with intent to rob. The Court of Appeals may not share my rather broad approach to this, but so long as the statues [sic] say this is a Court of Equity I will—"

[Defense Counsel]: "—but, I believe the Court says, due process is—that's when there is—when a juvenile is being adjudicated for the same thing that an adult would, would normally be a crime for an adult or is on trial for the same offense, all of the—generally, all of the rights that are accorded to the adult, except for the right of a jury, would accrue to the benefit of the juvenile, and I believe one of the benefits is that you can't be convicted of a crime or [you are?] not charged with—"

The Commissioner thereupon recommended that R.R.P. be placed under the care of the Division of Youth Services, but suspended the order and placed R.R.P. under court supervision in his mother's home on condition that he (1) comply with the official rules of court supervision, (2) meet with the deputy juvenile officer, (3) attend school daily, (4) maintain a curfew and (5) enroll in the "restitution" program of the court. This recommendation was adopted and approved by the judge of the juvenile court. It is from this order R.R.P. has appealed.

Appellant makes two points. He contends that the trial court erred (1) in finding "beyond a reasonable doubt that the juvenile was guilty of being an accessory after the fact of assault with intent to rob, [because] the juvenile was not given sufficient notice in advance that he was being charged as an accessory after the fact of assault with intent to rob" and (2) in finding him guilty of being an accessory after the fact "in that the only evidence of the crime was circumstantial and that the circumstantial evidence failed to preclude all reasonable theories of defendant's innocence."

As to the first point he argues that *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) holds that due process requires that the juvenile be given notice of the alleged misconduct with par-

ticularity sufficiently in advance so that he may have a reasonable opportunity to prepare a defense. He argues that there was no indication that he would be tried "as other than a principal" and that the petition did not indicate that he was "acting in concert with anyone." He also argues that in the criminal process an accessory after the fact commits a separate and distinct offense from the crime of the principal, *State v. Key*, 411 S.W.2d 100, 103 (Mo.1967), and cannot be charged or punished as a principal offender, *State v. Umble*, 115 Mo. 452, 22 S.W. 378, 380 (1893). He vigorously contends that a juvenile "cannot be found guilty of the offense of accessory after the fact when he is charged with either being a principal or an accessory before the fact." [1] And he concludes that before a juvenile is placed under supervision and restraint the juvenile "be minimally notified of what charges he should be prepared to answer instead of twisting legal principles so as to satisfy the courts own personal suspicions."

As to his second point, appellant argues that the only evidence which supported the finding of being an accessory after the fact of assault with intent to rob was that R.R.P. changed clothes with Robert for the reason that on September 25, 1975, at about 7:30 p.m. Robert was "cold." He argues that this sole evidence of being an accessory after the fact was the fact of changing clothes and was circumstantial and this sole evidence did not exclude every reasonable hypothesis of innocence.

Appellant makes many broadside attacks upon the finding and order of the court. In essence and upon analysis he contends that the order should be reversed because (1) he was not given adequate notice in advance that he was charged with being an accessory after the fact of an assault with intent to rob, but rather was given notice of an attempted robbery of John Chapman, or to put it differently—he was not informed of the specific act of delinquency for which he

1. He also relies on the new Juvenile Court Rules effective August 1, 1976. Rule 128.10— "The petition should set out in detail and with particularity the facts constituting the basis for

juvenile court jurisdiction under Section 211.-031 RSMo." This hearing, however, was held prior to the effective date of our new rules, but embodies the concept of due process.

was found "guilty" [accessory] although he was given notice of a robbery attempt; (2) he was not informed that he would be tried as other than a principal and was not informed that he was acting in concert with another; (3) the juvenile court cannot find the juvenile to come within the provisions of the Code when he is charged as a principal in an attempted robbery but is found to have been an accessory after the fact of an assault with intent to rob; and (4) the evidence of exchanging clothes is purely circumstantial which does not exclude "every reasonable hypothesis of innocence."

The respondent, the juvenile officer, does not respond to the specific points and contentions raised by the appellant, but is content to respond that the court did not err because the court had "direct and substantial evidence that the behavior of the appellant was injurious to his welfare and the welfare of others and that such behavior amounted to being an accessory after the fact of assault with intent to rob." The State argues, in effect, that the philosophy of the juvenile system is not identical to the purposes of the criminal system, that R.R.P. had sufficient notice of the acts of delinquency, that the evidence was sufficient to show that "[t]he behavior, environment or associations of the child [was] injurious to his welfare or to the welfare of others," Section 211.031(1)(c), and that the evidence was sufficient to support all of the elements necessary to show that appellant was an accessory after the fact of an assault with intent to rob under § 556.180 RSMo.

Under the record in this cause, we conclude that the order of the juvenile court finding that the juvenile was an accessory after the fact of an assault with intent to rob should be affirmed. The purpose and philosophy underlying the juvenile court system is well known and need not be repeated here. See *In re F— C—*, 484 S.W.2d 21, 25 (Mo.App.1972); *J.D.H. v. Juvenile Court of St. Louis County*, 508 S.W.2d 497, 500 (Mo. banc 1974). While *Application of Gault*, supra, abrogated a double standard between certain procedural rights accorded adults and those accorded children, no court has yet equated all of the aspects of the criminal process with the juvenile process.

■ We adhere to the principles of *Application of Gault*, supra, where it is said: ". . . Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.' [note] . . . Notice at that time [at the hearing] is not timely; and even if there were a conceivable purpose served by the deferral proposed by the court below, it would have to yield to the requirements that the child and his parents or guardian be notified, in writing, of the specific charge or factual allegations to be considered at the hearing, and that such written notice be given at the earliest practicable time, and in any event sufficiently in advance of the hearing to permit preparation.[2] Due process of law requires notice of the sort we have described—that is, notice which would be deemed constitutionally adequate in a civil or criminal proceeding. [note] It does not allow a hearing to be held in which a youth's freedom and his parents' right to his custody are at stake without giving them timely notice, in advance of the hearing, of the specific issues that they must meet. . . ." *Application of Gault*, supra, 87 S.Ct. at 1446–1447.

■ It is clear that due process will not permit general or vague charges, as in *Gault*, to be levelled at a juvenile. While numerous decisions have interpreted the notice requirements of *Gault*, supra, the basic test is that the petition should set forth facts constituting the alleged acts of delinquency and not mere conclusions as in *Gault*.

---

**2.** See *Commonwealth v. Roskov*, 224 Pa.Super. 393, 307 A.2d 63 (1973)—no advance notice of auto larceny.

"Due process of law requires that a juvenile, in the same manner as an adult, be notified of the charges against him. The charges must 'set forth with particularity the misconduct upon which the delinquency petition was based', so that the juvenile will be able to prepare a proper defense and conduct 'such investigation [of the charges] as may be necessary.' . . ." *In Interest of Bryant,* 18 Ill. App.3d 887, 310 N.E.2d 713, 716 (1974).

■ Under this test of notice we believe that R.R.P. and his parent had adequate notice of the alleged delinquent act. The notice informed them of the nature and substance of the proceeding, it alleged the facts which bring the child under the provisions of the juvenile code, and it notified him and his mother of the time and date of the alleged conduct. See § 211.091, RSMo. This was sufficient for the juvenile and his parent and counsel to be informed of the nature of the conduct and of the specific delinquent act of attempted robbery to permit them and counsel to prepare an adequate defense. The notice and petition therefore satisfied all the requirements of *Application of Gault,* supra.

■ The appellant, however, complains that there was no notification that he "acted in concert" with others, but that the petition treated him as acting as a principal only. Even in the criminal process this is not necessary. An information charging a defendant with robbery is sufficient to sustain a conviction of robbery when the evidence shows that he participated and acted in concert with others. *State v. Butler,* 310 S.W.2d 952, 957 (Mo.1958); *Rowden v. State,* 493 S.W.2d 699, 702 (Mo.App.1973).

■ As we view it, the crucial issue for our determination and which is raised by the appellant is whether the appellant, R.R.P., may be found to be delinquent as an accessory after the fact of assault with intent to rob when the petition informed him that he was delinquent because of an attempted robbery. The precise issue presented is whether the juvenile court may assume jurisdiction under § 211.031(1)(c) or (d) when the petition alleged that the juvenile was delinquent because of an attempted robbery, but the court found that under the evidence presented by the juvenile he was an accessory after the fact of assault with intent to rob. Under the circumstances of this case, we hold that the juvenile court did not err in finding the appellant to be an accessory after the fact of assault with intent to rob although the petition alleged attempted robbery.

■ Due process requires that the petition set forth with specificity the alleged violation of law either in the language of the statute or so plainly that the nature of the offense may be understood by the child and his parents. Due process also prohibits a juvenile court from finding that a child comes within its jurisdiction when the petition alleges a specific allegation of an act of delinquency but the allegation is not supported by legally sufficient evidence. In other words, due process of law precludes a juvenile court from taking jurisdiction of a child when the petition alleges a certain act of delinquency but the evidence offered by the State is legally insufficient in that it fails to prove the particular act of delinquency alleged, but does prove a separate and distinct offense, as distinguished from a lesser included one, which was not alleged in the petition.[3] For the juvenile court to

3. *In re Howard,* 515 P.2d 1399 (Okl.Cr.1973)— allegation of attempted rape; allegation not supported by legally sufficient evidence but court found that child committed offense of indecent exposure; *D. P. v. State,* 129 Ga.App. 680, 200 S.E.2d 499 (1973)—where petition alleged juvenile had committed burglary but made no mention of offense of receiving stolen goods and receiving stolen goods was not a lesser included offense, it was held that notice was insufficient; *In Interest of Bryant,* supra,

—petition failed to charge an essential element of aggravated battery on police officer; *In re Meyer,* 204 N.W.2d 625 (Iowa 1973)—petition alleged neglect under one subdivision of law but court found neglect under another; *State In Interest of Simon,* 295 So.2d 473 (La.App. 1974)—petition alleged that juvenile received stolen things but State failed to establish offense, court could not adjudge that juvenile is in need of supervision and care; *D. M. M. v. State,* 275 So.2d 308 (Fla.App.1973)—petition

take jurisdiction of the child under such circumstances would prejudice the juvenile and his parents in the presentation of his defense and would allow the juvenile court to adjudicate a juvenile to be delinquent for any offense the evidence might reveal. This would deny him the notice of the grounds upon which the adjudication of delinquency is being pursued.

But these principles and decisions which we fully approve are not dispositive or controlling under the unique facts in this record.

This was not a situation in which the State charged one act of delinquency and proved another. The petitioner's evidence conformed to the allegations of the petition and established the facts necessary for the juvenile court to take jurisdiction. This was not a situation where the State's evidence failed to support the act of delinquency alleged in the petition. The petition charged attempted robbery and all of the State's evidence proved that there was such an attempt. Taking the evidence in the light most favorable to the State, Chapman identified R.R.P. as one of his assailants; he testified that R.R.P. kicked him twice and attempted to take money from his pockets. He identified R.R.P. by both his clothing and his face. He got a "good look" at R.R.P. It was the appellant, not the State, who introduced the evidence that he changed clothes with Robert because Robert was on that September evening "cold."

R.R.P. testified Robert D— told Steve that Chapman had money on him and to "go and get him," that he had a "pretty good idea what they were up to," and that even though he knew that Robert had possibly beaten up and robbed John Chapman he still changed clothes with him.[4] Under such circumstances where the juvenile himself introduced such evidence and the court apparently believed his testimony, we cannot conclude that the court erred in finding that the appellant came within the jurisdiction of the juvenile court.

Under all the circumstances of this record, there is no error. The court here had ample evidence to support its finding that the appellant came within the jurisdiction of the juvenile court under § 211.-031(1)(c). The appellant had ample notice that he was "charged" with attempted robbery, and the evidence of the juvenile officer amply supported the allegations in the petition. It was the appellant who injected the defense that he "changed clothes" and that he was an accessory after the fact of an assault with intent to rob, knowing full well that an attempted robbery had taken place. Notice of being an accessory would have served no useful purpose and would not have prepared him to meet the allegations of the petition; hence, he could not have been prejudiced by such lack of notice of being an accessory after the fact. An accessory after the fact of assault with intent to rob is such conduct for the court to find that the appellant came within its jurisdiction under § 211.031(1)(c). The appellant cannot introduce such evidence in his case and then simultaneously claim lack of notice of being an accessory after the fact. While appellant should not receive the "worst of both worlds" he is not entitled to the "best of both worlds." Cf. *Kent v. United States*, 383 U.S. 541, 556, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84, 94 (1966).

All of the elements of being an accessory after the fact were shown under § 556.180, RSMo. The appellant was not related to Robert; a "felony" had been committed; appellant gave aid to Robert "knowing" a felony had been committed and gave aid to others, who, by his own testimony, assaulted Chapman with intent to rob.

Furthermore, there was ample evidence here for the court to find that appel-

---

alleged possession of narcotic paraphernalia, allegation not proved and court based judgment of delinquency on use of narcotics; *Allen v. Ladson*, 119 Ga.App. 44, 165 S.E.2d 881 (1969)—finding of delinquency on basis of evidence relating to incident other than, and not related to, offense charged in petition was erroneous.

4. It is interesting to note that if Robert were cold, why did he give his knitted cap to R.R.P.?

lant came within the jurisdiction of the juvenile court because of § 211.031(1)(c) [and not (d)] which deals with children who behave in ways injurious to themselves or others. *In re M— K—,* 493 S.W.2d 686, 688 (Mo.App.1973).

 Lastly, there is no merit to the circumstantial evidence argument of the appellant. This was not a wholly circumstantial evidence case. There was direct evidence for the court to find that the appellant either participated in the attempted robbery or was an accessory after the fact under § 556.180, RSMo. The victim testified that an attempted robbery took place, that the appellant was involved and kicked him twice, and that although R.R.P. knew that Robert had beaten up or robbed Chapman he still traded clothes with him. This was sufficient to show that appellant was an accessory after the fact.

The appellant contends that the mere evidence of changing clothes with Robert was circumstantial evidence and did not exclude every reasonable hypothesis of innocence. But the fact of changing clothes must be viewed in the context of the other facts. When those facts are considered—he was at the scene, he changed clothes knowing that an attempted robbery had taken place—the evidence excluded every reasonable hypothesis of innocence. This contention is without merit. *State v. Cain,* 507 S.W.2d 437, 440–441 (Mo.App.1974).

Under all the circumstances, therefore, we hold that (1) the appellant and his parent received sufficient notice of the act of delinquency and that the standards of *Application of Gault,* supra, were not violated, (2) it was unnecessary to allege in the petition that the appellant acted in concert with others, (3) under the circumstances we will not set aside the order of the trial court under the principles of *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976) and *In re M— K—,* supra, 493 S.W.2d at 688, (4) appellant cannot complain of lack of notice of being an accessory after the fact when he injected this issue in his defense, and (5) there was sufficient evidence that appellant was an accessory after the fact of assault with intent to rob to exclude every reasonable hypothesis of innocence.

Under all these circumstances we cannot say that the trial court's finding was not based on substantial evidence, or the weight of the evidence, or was a misapplication of the law. *Murphy v. Carron,* supra, 536 S.W.2d at 32.

We have read the entire transcript, the briefs and all the authorities relied upon and find no prejudicial error.

The judgment of the trial court is affirmed.

KELLY, P. J., and GUNN, J., concur.