v.

**JUVENILE OFFICER, Respondent.**

**No. WD56732.**

Missouri Court of Appeals,
Western District.

Oct. 5, 1999.

Leonard L. Wagner, Kansas City, for appellant.

Jean R. Seeber, Kansas City, for respondent.

Before: Presiding Judge LOWENSTEIN, Judge HOWARD and Judge RIEDERER.

LOWENSTEIN, Presiding Judge.

Appellant J.D.B., a juvenile, was brought before the Circuit Court of Jackson County, Family Court Division, based on charges resulting from an incident in which he circled and then chased after the car of Bonnie Hord, a woman who lived nearby. A commissioner found J.D.B. guilty of the class C misdemeanor of third degree assault, § 565.070, RSMo Cum. Supp.1998. The circuit court confirmed and reduced the commissioner's recommendations to judgment. On appeal, the juvenile contends the trial court erred in convicting him of assault because there was insufficient evidence to prove either that J.D.B. placed Ms. Hord in apprehension of immediate physical injury or that J.D.B. had any physical contact with Ms. Hord.

## STATEMENT OF FACTS

A two count petition was filed against J.D.B. by the juvenile officer. Count I of the first amended petition alleged that J.D.B. had committed the class B misdemeanor of second degree sexual misconduct. Section 566.093, RSMo 1994. Count II, which was admitted by the juvenile, alleged that J.D.B.'s behavior was injurious to his welfare because he had carved his initials into his leg and burned both his arms with a cigarette lighter. J.D.B. was brought to trial on these two counts before a commissioner. As noted, J.D.B. admitted to Count II of the petition, that his behavior was injurious to his welfare.

J.D.B. denied the sexual misconduct allegation of Count I.

At trial, after hearing the testimony of both the victim and J.D.B. on the sexual misconduct count, the commissioner determined the evidence was insufficient to prove sexual misconduct. However, the court stated its belief that J.D.B., by his own testimony, had admitted to the uncharged crime of third degree assault. In his Order Continuing Cause for dispositional hearing, the commissioner found the "[e]vidence adduced sustains the allegations as to Count I as amended to conform to the evidence as a violation of § 575.070 RSMo."[1] The commissioner's Findings and Recommendations were that the evidence sustained both the amended Count I, the third degree assault charge, and the previously admitted Count II. These Findings and Recommendations were adopted without modification by the circuit court.

The facts relating to the third degree assault charge are difficult to ascertain for several reasons. First, the trial testimony of both the victim and the juvenile was centered around the charged allegation of sexual misconduct. It was not until after this evidence was presented that the commissioner determined a third degree assault had been committed. Second, the court did not make detailed findings of fact as to third degree assault. And third, the testimony of the complaining witness, Ms. Hord, was somewhat confused and apparently unreliable. Even the commissioner remarked that he was given some pause about "her ability to relate events," and that the events "can not have occurred as she testified." The evidence will now be recounted.

At trial, witness Hord testified as to events that occurred on October 20, 1997, outside her apartment complex in Lee's Summit, Missouri. Ms. Hord testified that, at some time during the late afternoon or evening hours on that day, J.D.B.

---

1. The Commissioner's reference to § 575.070 is obviously a mistake in that all other references are to § 565.070.

and two of his friends, wearing Halloween masks, surrounded her car and "gyrat[ed] their hips in a sexual manner." Ms. Hord became "upset" and left to run errands. Later that evening, at approximately 8:20, Ms. Hord again encountered the three teens while she was outside near her mailbox. When she saw them approaching, Ms. Hord got in her car and locked the doors. She testified that the boys again surrounded her car, this time holding the masks in their hands and also one of the boys "[n]ot J.D.B., [a]nother one" was carrying a plastic "machete." Ms. Hord testified the boys were again gyrating their hips and that J.D.B. was right next to her driver's side window "pumping his hips right into the car, so the car was moving."

At this time, Ms. Hord left, drove to Wal–Mart and called the police. When asked by the juvenile's attorney if the incident had frightened her, Ms. Hord replied, "Not frightened. Alarmed. I didn't know what they were doing." When asked if she thought the boys were going to rob her, Ms. Hord responded, "My car door was locked. What could they do?" Ms. Hord also stated that she knew the "machete" was plastic just by looking at it and that she "thought they were starting Halloween early."

At trial, J.D.B. took the stand to testify on his own behalf. The juvenile testified that while Ms. Hord was at the mailbox he remarked to his friends, "Hand me a mask. I'm about to scare this woman." J.D.B. claimed he stood by her driver's side window, walked around to the passenger side window and then chased after her car as Ms. Hord left the scene. Contrary to Ms. Hord's testimony, J.D.B. said he was wearing a Halloween mask and was carrying the "machete" when the incident occurred. When asked about the events of that evening, J.D.B. remarked, "I was just trying to scare her. It was just going to be a joke." When asked what he would like to say to Ms. Hord, the juvenile replied, "I would like to apologize for scaring her...And also, I would like to apologize

for scratching her car. I didn't do it, but one of my friends did." After being questioned why he would apologize for scaring Ms. Hord, J.D.B. responded, "Because I do admit to that."

## STANDARD OF REVIEW

 The standard of review in a juvenile proceeding is the same as that applied in a court-tried civil case. Unless there is no substantial evidence to support the judgment, the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law, the judgment must be affirmed by this court. *T.L.C. v. T.L.C.*, 950 S.W.2d 293, 295 (Mo.App.1997) (cases cited therein omitted). The evidence is considered in the light most favorable to the judgment and all contrary inferences are disregarded. *Id.* This court defers to the trial court's determinations as to witness credibility and the weight to be given their testimony. *Id.*

## ANALYSIS

Under § 565.070.1 there are six possible variances of a third degree assault charge, only two of which, subdivisions three and five, constitute a class C misdemeanor. The judgment entered by the circuit court convicted J.D.B. of a class C misdemeanor but did not indicate under which subdivision it so found. Under § 565.070.1(3) a person commits third degree assault if he or she "purposely places another person in apprehension of immediate physical injury." Under § 565.070.1(5) one commits assault if he or she "knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative." The court will address each of these variances in turn.

 Under subdivision three of this subsection of the statute, it is implicit that there are two elements to such an assault charge: (1) J.D.B. must have *intended* to place Ms. Hord in apprehension of immediate physical injury, and (2) Ms. Hord must

*actually* have been placed in such apprehension. Taking the evidence in the light most favorable to the judgment, the court finds only one of these elements was met.

To be guilty of third degree assault under § 565.070.1(3), J.D.B. must have intended to place Bonnie Hord in apprehension of immediate physical injury. By his own testimony, the juvenile admitted he was trying to scare Ms. Hord when he circled and then chased after her car. In addition to this direct evidence, J.D.B. testified he was wearing a mask at the time he approached the victim and was carrying a plastic weapon. Intent may be shown by circumstantial evidence. *State v. Robinson,* 710 S.W.2d 14, 17 (Mo.App.1986). By the juvenile's own admission and by his actions, there is sufficient evidence in the record to support a finding that J.D.B. intended to place Ms. Hord in apprehension of immediate physical injury.

However, in order to be convicted of third degree assault under subdivision three, the victim must actually have been placed in apprehension of immediate physical injury. *State v. Cavitt,* 703 S.W.2d 92, 93 (Mo.App.1985) (Stating that one element of assault under § 565.070.1(3) is "placing another person in apprehension of immediate physical injury.") (See also *State v. McGuire,* 924 S.W.2d 38, 39 (Mo. App.1996) in which conviction for third degree assault of a law enforcement officer under § 565.083.1(3) [A statute containing language nearly identical to § 565.070.1(3)] was reversed because the state failed to prove the officer was actually placed in fear of immediate physical injury). To apprehend something means to "conceive, believe, fear, [or] dread" it. *State v. McGuire,* 924 S.W.2d 38, 40 (Mo. App.1996) (quoting Black's Law Dictionary 101 (6 th ed.1990). § 566.061, a statutory definitional section, defines "physical injury" as "physical pain, illness, or any impairment of physical condition."

Under the assault statute, Ms. Hord must have conceived or feared physical pain or impairment when J.D.B. attempted to scare her that night. The victim testified she was not frightened, only alarmed, that since her car doors were locked she didn't think the boys could do anything to her, and that she knew the "weapon" was plastic and thought it was part of an early Halloween event. This testimony gives absolutely no indication that Ms. Hord was placed in fear for her physical well-being, nor is there any other evidence in the record that would warrant such a finding. Accordingly, there is insufficient evidence to support a finding that Bonnie Hord was placed in apprehension of immediate physical injury by the incident. That element of § 565.070.1(3) cannot be met, and an assault conviction under that section cannot stand.

■ Under subdivision five of § 565.070.1, one is guilty of third degree assault if he or she "knowingly causes physical contact with another person knowing the other person will regard the contact as offensive or provocative." This court has previously defined physical contact sufficient to constitute an assault as "the touching of the person of another or something so intimately associated with, or attached to his person to be regarded as a part thereof." *State v. Greathouse,* 789 S.W.2d 50, 52 (Mo.App.1990) (citing 6A C.J.S. Assault and Battery Sec. 70 (1975)).

Viewing the record in the light most favorable to the judgment, the only possible evidence of contact between Ms. Hord and J.D.B. was Ms. Hord's testimony that the juvenile was pushing against her car in such a manner that the car was moving. There is also J.D.B.'s testimony that he would apologize for scratching Ms. Hord's vehicle, which he then claimed was done not by him but by another of the juveniles. There is no evidence in the record of any contact that J.D.B. had with Ms. Hord's actual person. In order to support a conviction under this theory of assault, it must be found that the juvenile's contact with Ms. Hord's car was with something so intimately associated with or attached to her as to be considered a part of her

person. The juvenile officer cites to no authority that would support such a finding, and this court can find no such Missouri authority.

While certain sources do note that at common law contact with the car in which a person is riding may be sufficient to constitute the physical contact required for a battery or certain types of assault (see PROSSER, THE LAW OF TORTS § 9, at 34 (4 th ed.1971)), the cases which apply this theory are far removed factually from the act of J.D.B. bumping into, or even scratching, Ms. Hord's car. *See e.g., Crossman v. Thurlow,* 336 Mass. 252, 143 N.E.2d 814 (1957) (Defendant guilty of assault by intentionally ramming his vehicle into the vehicle of another three times, resulting in injury to the vehicle's passengers); *United States v. Anderson,* 190 F.Supp. 589 (D.Md.1961) (Defendant guilty of assault with a dangerous weapon by throwing a club at the windshield of a moving car, injuring the vehicle's occupants); *Farm Bureau Mut. Auto. Ins. Co. v. Hammer,* 177 F.2d 793 (1949) (Defendant guilty of assault by intentionally driving his truck into another's automobile, injuring its occupants). The facts presented in this case in no way rise to the level of an assault by physical contact. An assault conviction under § 565.070.1(5) cannot stand.

There is no substantial evidence in the record to support a conviction for third degree assault under either subdivision three or five of § 565.070.1. The judgment of the trial court as to the assault charge is reversed.

■ As discussed above, the original petition filed in the Family Court Division alleged that J.D.B. had committed the crime of sexual misconduct. It was just after the testimony of J.D.B., during the trial, that the commissioner determined he would be charged with, and later convicted of, an uncharged offense.[2] In making this decision, the commissioner told the parties he believed J.D.B., by his own testimony, had admitted to the crime of third degree assault. The commissioner relied on case authority that held when a juvenile takes the stand and admits to an uncharged offense, the court may find him guilty of that offense. This ruling has not been challenged by the appellant, but the issue, nevertheless, will be discussed.

The case authority in question would appear to be *In the Interest of R.R.P.,* 545 S.W.2d 351 (Mo.App.1976).[3] *R.R.P.* was an attempted robbery case involving a juvenile. At an adjudicatory hearing, R.R.P. took the stand to testify on his own behalf. After hearing this evidence, the trial court made the following announcement and the subsequent dialog ensued:

THE COURT: 'Based on the testimony offered…it is the finding of the Commissioner that the juvenile comes within the provisions of subdivision C & D of paragraph 1 of section 211.031…and finds this beyond a reasonable doubt by reason of being an accessory after the fact of…'

(Defense Counsel): '—I don't think you can find him guilty of anything—anything other than what was found.'

THE COURT: 'That's exactly the situation. I'm not so sure I don't agree with you…Certainly the articles of adult law would definitely agree with you. I find it difficult, within the context of these facts, to acquit your client, and it seems the best way to deal with your client is

**2.** The juvenile officer claims the court could "amend the pleadings to conform to the evidence when issues not raised by the pleadings are tried by express or implied consent of the parties, under Missouri Supreme Court Rule 55.33(b)." While this rule of civil procedure could apply in a juvenile proceeding if not inconsistent with the juvenile rules, *Rule 110.04,* it is inapplicable here. There is no evidence in the record of consent by the juvenile to try third degree assault. Regardless, the court did not rely on Rule 55.33(b) when it adjudicated J.D.B. of third degree assault.

**3.** It is interesting to note that *R.R.P.* has *never* been cited as authority by a Missouri court.

to deal with your client on the basis of what he says he's responsible for; which is accessory after the fact of assault with intent to rob...'

(Defense Counsel): '—but, I believe the Court says, due process is...when a juvenile is being adjudicated for the same thing that an adult would, would normally be a crime for an adult or is on trial for the same offense, all of the—generally, all of the rights that are accorded to the adult, except for the right of a jury, would accrue to the benefit of the juvenile, and I believe one of the benefits is that you can't be convicted of a crime or (you are?) not charged with...' *Id.* at 354, 355.

On appeal, the juvenile asserted the trial court erred because he was not given sufficient notice in advance that he was being charged as an accessory.

The Court of Appeals in *R.R.P.* began its analysis by quoting from the most notable juvenile procedural rights case, *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Supreme Court in *Gault* wrote:

> ...Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.' (note) ... Notice at that time (at the hearing) is not timely;

*Id.* at 33, 87 S.Ct. 1428. However, the court in *R.R.P.* went on to hold that it was not error for the juvenile court to find R.R.P. guilty as an accessory after the fact of assault with intent to rob when the petition charged him with attempted robbery. In making this determination, the court wrote:

> [D]ue process of law precludes a juvenile court from taking jurisdiction of a child when the petition alleges a certain act of delinquency but the evidence offered by

the State is legally insufficient in that it fails to prove the particular act of delinquency alleged, but does prove a separate and distinct offense, as distinguished from a lesser included one, which was not alleged in the petition. For the juvenile court to take jurisdiction of the child under such circumstances would prejudice the juvenile and his parents in the presentation of his defense and would allow the juvenile court to adjudicate a juvenile to be delinquent for *any offense the evidence might reveal.* This would deny him the notice of the grounds upon which the adjudication of delinquency is being pursued.

*R.R.P.*, 545 S.W.2d at 357–8. (Footnotes omitted; emphasis added).[4] The court then distinguished the above-mentioned situation from the one involved with R.R.P. The court found that the state had not charged one act of delinquency and proved another, but that R.R.P. himself had injected into the record evidence of being an accessory after the fact. "The appellant cannot introduce such evidence in his case and then simultaneously claim lack of notice of being an accessory after the fact." *Id.* at 358.

The cases the *R.R.P.* court attempts to distinguish revolve around the same theme. The courts charged a juvenile with one offense, could not find him guilty of that offense, but convicted him of another in order to get the juvenile into rehabilitation. *See e.g., In re Howard*, 515 P.2d 1399 (Okl.Cr.1973) (Juvenile prejudiced and denied notice when court charged child with attempted rape but convicted same of indecent exposure); *D.P. v. State*, 129 Ga.App. 680, 200 S.E.2d 499 (1973) (Conviction reversed because juvenile given insufficient notice of charge when accused of burglary and convicted of receiving stolen goods); *D.M.M. v. State*, 275 So.2d 308 (Fla.App.1973) (Juvenile denied

4. Note – While it is true that one can be charged with one crime and convicted of a lesser included offense, in the present case, as in *R.R.P.,* the juvenile was adjudicated of a separate and distinct offense as opposed to one that was lesser included.

**156**

due process by conviction for crime not alleged in the petition). That the juvenile himself injected evidence of his own guilt of a separate offense in *R.R.P.* is a distinction without a difference. It is not clear from all the cases distinguished in *R.R.P.* from whence the evidence of guilt of a separate crime came. *See e.g. Howard,* supra at 1399, (" ... [T]he court concluded from the facts presented that the allegation of attempted rape was not supported by legally sufficient evidence. However, the court determined appellant did commit the offense of indecent exposure."); *D.P.,* supra at 500, ("Upon hearing the evidence, the court found that the evidence failed to show beyond a reasonable doubt that the juvenile had committed burglary. The court did find that the juvenile had committed the offense of theft by receiving stolen goods.")

It would seem to this court that convicting a juvenile of a separate and distinct offense for which he was not specifically charged is a violation of the principles expounded in *In re Gault* regardless of the source of the damning evidence. Albeit the court had jurisdiction over J.D.B. here because of the count pertaining to his personal welfare, this court cannot allow an amendment to third degree assault, based on the testimony of the juvenile, where the petition alleges sexual misconduct.

The judgment of the circuit court as to third degree assault is reversed. The juvenile is to remain in the custody of the juvenile officer under the portion of the judgment not part of this appeal.

All Concur.