Zel M. Fischer, Chief Justice
Robert Stewart appeals a judgment convicting him of unlawful use of a weapon, § 571.030, third-degree domestic assault, § 565.074, first-degree burglary, § 569.160, and armed criminal action, § 572.015.[1] Stewart argues the circuit court erred in overruling his motion for a judgment of acquittal because the evidence was insufficient to support his assault and burglary convictions. The judgment is affirmed.[2]
Factual and Procedural Background
Viewed in the light most favorable to the verdict, the record shows Stewart and T.S. divorced in early 2014 but attempted to reconcile and began living together in November 2014. Stewart and T.S. made a $5,000 down payment on a rent-to-own arrangement for the residence at issue. When Stewart failed to return home one *533 night, T.S. told him to leave and "not to come back." Stewart agreed and began sleeping in a camper on the property.
On January 23, 2015, a few days after Stewart agreed to move out of the residence, T.S. asked Stewart to deliver firewood to the residence. Stewart and T.S.'s uncle moved the firewood into the basement. After delivering the firewood, Stewart went upstairs and knocked on T.S.'s bedroom door. T.S. exited the bedroom with another man. T.S. observed Stewart holding a gun and told him to leave. Stewart responded by firing the gun into the ceiling. T.S. testified she was "startled" by the shot and more forcefully told Stewart to leave. Stewart threatened to kill T.S. and her guest. Stewart then left the residence and, as T.S. went to close the door behind him, Stewart fired a shot through a window near the door.
Following a jury trial, the circuit court entered a judgment convicting Stewart of third-degree domestic assault, first-degree burglary, armed criminal action, and unlawful use of a weapon. The circuit court overruled Stewart's motion for judgment of acquittal. Stewart appeals.
Standard of Review
"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." State v. Wright , 382 S.W.3d 902, 903 (Mo. banc 2012) (internal quotation omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." Id. "This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." Id.
Domestic Assault
The state charged Stewart with third-degree domestic assault in violation of § 565.074.1(3).[3] The state bore the burden of proving, beyond a reasonable doubt, T.S. was a household member and Stewart purposely placed her in subjective apprehension of immediate physical injury by any means. Stewart argues there is insufficient evidence to support his conviction for third-degree domestic assault because T.S. testified his actions did not place her in apprehension of immediate physical injury.
Stewart's argument fails because it requires this Court to credit T.S.'s testimony when the jury declined to do so. The jury, as the finder of fact, is under no obligation to believe any particular evidence, including T.S.'s testimony. State v. Jackson , 433 S.W.3d 390, 399 (Mo. banc 2014). This Court does not sit as a super juror with veto power over the jury's verdict and will not substitute its own credibility determination for that of the jury. Wright, 382 S.W.3d at 903 (internal quotation omitted).
*534 There is no statutory definition of the word "apprehension" as used in § 565.074.1(3). "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver , 293 S.W.3d 437, 446 (Mo. banc 2009). The word "apprehension" means "the act or power of perceiving or comprehending" or "the result of apprehending mentally: conception." Webster's Ninth New Collegiate Dictionary 97 (1989). Therefore, Stewart's conviction for third-degree domestic assault will be affirmed if there is sufficient evidence for a reasonable juror to find beyond a reasonable doubt T.S. perceived, comprehended, or conceived immediate physical injury.
Viewing the evidence in the light most favorable to the verdict, the record shows Stewart knocked on T.S.'s bedroom door while holding a gun. When she told him to leave, Stewart discharged the gun into the ceiling. T.S. testified she was "startled" by the shot and more forcefully told Stewart to leave. T.S. testified, if the bullet had hit her at close range it would "do some damage." Finally, T.S. moved to shut the door behind Stewart, at which time Stewart fired a second shot back into the house. T.S.'s testimony that she was startled by the gunshot, forcefully told Stewart to leave, was aware she could have been injured by the gunfire, and moved to shut the door behind Stewart as he left constitutes sufficient evidence for a reasonable juror to find T.S. subjectively perceived, comprehended, or conceived immediate physical injury due to Stewart's actions. The circuit court did not err in overruling Stewart's motion for judgment of acquittal on his conviction for third-degree domestic assault.[4]
The dissent relies heavily on J.D.B. v. Juvenile Officer , 2 S.W.3d 150 (Mo. App. 1999), to support its argument there was insufficient evidence for a reasonable juror to find Stewart's actions placed T.S. in subjective apprehension of immediate physical injury.[5] J.D.B. is factually distinguishable and analyzed the sufficiency of the evidence to support a conviction for the separate crime of third-degree assault. The issue here is whether the fundamentally different facts of this case are sufficient to support Stewart's conviction for third-degree domestic assault. Further, J.D.B. did not follow this Court's basic rule *535 of statutory interpretation for undefined statutory terms by applying the plain, ordinary meaning of the word "apprehension." J.D.B. reasoned there was insufficient evidence for a reasonable juror to find the victim was "placed in fear for her physical well-being, nor is there any other evidence in the record that would warrant such a finding." J.D.B. , 2 S.W.3d at 153. Therefore, J.D.B. did not apply the plain, ordinary meaning of the word "apprehension." Instead, the court of appeals uncharacteristically referenced Black's Law Dictionary and equated "apprehension" with "fear." While a victim's fear may prove apprehension, fear is only one way in which a victim may perceive, comprehend, or conceive immediate physical injury from the defendant's actions.
Burglary
The state charged Stewart with first-degree burglary pursuant to § 569.160.1(3) for knowingly remaining unlawfully in the residence possessed by T.S. for the purpose of committing a domestic assault.[6] In pertinent part, § 569.010(8) provides "a person enters unlawfully or remains unlawfully in or upon premises when he is not licensed or privileged to do so." Stewart argues there was insufficient evidence to prove beyond a reasonable doubt he was not licensed or privileged to remain on the premises because he had a property interest in the residence and continued to use the residence.
Stewart's alleged property interest in the residence does not foreclose his burglary conviction. Section 569.160 defines the circumstances in which "a person" commits the crime of burglary. Similarly, § 569.010(8) provides "a person ... knowingly remains unlawfully when he is not licensed or privileged to do so." Both statutes apply, without limitation, to "a person," and neither statute immunizes those with a property interest in the premises from criminal liability for burglary.[7] The dispositive issue is whether Stewart was licensed or privileged to remain in the residence.
Section 569.010 does not define the terms "licensed" or "privileged." "In the absence of a statutory definition, words will be given their plain and ordinary meaning as derived from the dictionary." State v. Oliver , 293 S.W.3d 437, 446 (Mo. banc 2009). Additionally, when the legislature utilizes an undefined statutory term with an established judicial or common law meaning, this Court presumes the legislature acted with knowledge of that meaning. Citizens Elec. Corp. v. Dir. of Dep't of Revenue , 766 S.W.2d 450, 452 (Mo. banc 1989).
A "license" is defined generally as "permission to act." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1304 (2002). A "privilege" is defined generally as "a right or immunity granted as a peculiar benefit, advantage or favor." Id. at 1805. Consistent *536 with these definitions, the common law provides a "license is a privilege to enter certain premises for a stated purpose" and "may be revoked at the will of licensor." Riverside-Quindaro Bend Levee Dist., Platte Cty., Mo. v. Mo. Am. Water Co. , 117 S.W.3d 140, 149 (Mo. App. 2003). Therefore, Stewart's license or privilege to remain in the residence was based on whether he had permission or a right to do so.
Viewed in the light most favorable to verdict, the evidence shows T.S. and Stewart agreed he would move out of the residence. Consistent with that agreement, Stewart stayed away from the residence and surrounding property, returning only at night to sleep in the camper. Stewart testified he and T.S. "were not living together on January 23, 2015." Under these circumstances, a reasonable juror could find T.S. was in sole possession of the residence and Stewart relinquished his license or privilege to remain there. Further, a reasonable juror could find Stewart exceeded the scope of any limited license and privilege to remain in the residence when, after delivering firewood to the basement, he went upstairs, twice ignored T.S.'s demands that he leave and, instead, fired a gun and threatened to kill her. Stewart's assertion he was licensed or privileged to remain in the residence because he continued to use the residence fails because it is based on evidence and inferences contrary to the verdict. Consequently, there was sufficient evidence from which a reasonable juror could find Stewart committed a burglary by knowingly remaining unlawfully in the residence for the purpose of assaulting T.S.[8] The circuit court did not err in overruling Stewart's motion for judgment of acquittal on his conviction for burglary.
Conclusion
The judgment is affirmed.
Wilson, Russell, Powell and Breckenridge, JJ., concur; Draper, J., dissents in separate opinion filed; Stith, J. concurs in opinion of Draper, J.
DISSENTING OPINION
George W. Draper III, Judge
I respectfully dissent from the principal opinion's holding there was sufficient evidence to convict Robert E. Stewart (hereinafter, "Stewart") of third-degree domestic assault. I believe the principal opinion's holding the jury rejected all of T.S.'s testimony leaves no subjective basis upon which to base Stewart's domestic assault conviction and, therefore, it should be vacated. Further, because I believe there was insufficient evidence presented to support the domestic assault conviction, the State did not have sufficient evidence to submit the burglary charge. Instead, I would find the evidence sufficient to support a conviction for first-degree trespassing and reverse Stewart's judgment of conviction and remand for resentencing.
Standard of Review
"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather 'accept[s] as true all evidence tending to prove guilt together with all reasonable inferences *537 that support the verdict, and ignore[s] all contrary evidence and inferences.' " State v. Ess , 453 S.W.3d 196, 206 (Mo. banc 2015) (quoting State v. Latall , 271 S.W.3d 561, 566 (Mo. banc 2008) ). This Court must "disregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them." State v. Grim , 854 S.W.2d 403, 411 (Mo. banc 1993). Taking the evidence in this light, this Court considers whether a reasonable juror could find each of the elements beyond a reasonable doubt.
Domestic Assault
Section 565.074.1(3), RSMo Supp. 2014,[1] provides, "A person commits the crime of domestic assault in the third degree if the act involves a family or household member, ... as defined in section 455.010, and [t]he person purposely places such family or household member in apprehension of immediate physical injury by any means." Stewart does not contest he is a family or household member. Instead, Stewart argues the state failed to offer sufficient evidence to prove beyond a reasonable doubt his actions placed T.S. in apprehension of immediate physical injury.
The principal opinion attempts to diminish the authority of J.D.B. v. Juvenile Officer , 2 S.W.3d 150, 153 (Mo. App. W.D. 1999), in which the court of appeals held the phrase "in apprehension of immediate physical injury" as used in section 565.070.1(3), the third-degree assault statute, required proof the victim was in subjective apprehension of immediate physical injury. The principal opinion emphasizes Stewart's case involves domestic assault, not third-degree assault. Yet section 565.070.1(3) employs the same operative language as section 565.0745 regarding "apprehension of immediate physical injury." The only distinction between the two statutes is that third-degree domestic assault requires the victim be a family or household member, while third-degree assault does not. This is a distinction without a difference.
In J.D.B. , a juvenile was convicted of third-degree assault after purposefully attempting to scare a woman, who was locked in her car, while the juvenile and his friends surrounded her car, waved a plastic machete, and made sexual crude gestures toward her. Id. at 152. When asked if the incident frightened her, the victim stated, "Not frightened. Alarmed. I don't know what they were doing." Id. The victim further testified she questioned what more the juveniles could do to her because her car doors were locked and the machete was plastic. Id. The juvenile division commissioner "remarked that he was given pause about '[the victim's] ability to relate events' and that the events 'cannot have occurred as she testified.' " Id. at 151. The juvenile admitted he intended to scare the victim at the hearing. Id. at 152. The court of appeals reversed the juvenile's adjudication on appeal, finding there was insufficient evidence to support a finding the victim was placed in apprehension of immediate physical injury by the incident. Id. at 153. The court of appeals defined "apprehend" as to "conceive, believe, fear, [or] dread." Id. Even though the juvenile division clearly rejected the victim's testimony, the court of appeals found the victim's testimony gave "absolutely no indication that [she] was placed in fear for her physical well-being, nor [was] there any other evidence in the record that would warrant such a finding." Id.
Because there is no other meaningful way to distinguish J.D.B. , which has stood as precedent for nearly twenty years, the *538 principal opinion criticizes the definition of "apprehend" because the court of appeals relied on Black's Law Dictionary for its definition rather than a standard dictionary. Yet this Court unanimously adopted use of Black's Law Dictionary definitions to construe statutory language as recent as Mantia v. Missouri Department of Transportation , 529 S.W.3d 804 (Mo. banc 2017), as discussed below. Further, when citing to standard dictionary definitions, this Court typically cites the Webster's Third New International Dictionary from 1993, which defines "apprehend" as "to anticipate esp. with anxiety, dread, or fear" and "apprehension" as "suspicion or fear...." Id. at 106. Because the standard dictionary definitions echo the definition J.D.B. adopted from the Black's Law Dictionary, there is no legitimate reason to toss aside this precedent other than the principal opinion cannot reconcile it with the facts of this case.
In this case, T.S. testified after she saw Stewart holding the gun, she told him to get out of the house. After Stewart fired the gun into the ceiling, T.S. testified the gunshot startled her, and if the bullet had hit her at close range it would have done some damage. T.S. then more forcefully told Stewart to get out of the house. When Stewart finally left the house, the prosecutor asked T.S. what was going through her mind at the time. T.S. answered, "I don't really remember." The following exchange then occurred:
[The prosecutor]: I'm asking you were you concerned when you heard that gunshot or the glass break that you could have been hit by that bullet?
T.S. I don't know. I don't remember what I felt. I guess.
[The prosecutor]: So is your answer you don't remember?
T.S. Yeah.
This scant testimony constitutes the entirety of the evidence presented concerning T.S.'s subjective apprehension of immediate physical injury. On cross-examination, T.S. explicitly denied being in fear or afraid of Stewart despite the gunshots and threats because he was "just blowing steam."
The principal opinion rejects Stewart's argument, finding the jury was free to disregard T.S.'s testimony because the jury is under no obligation to believe any particular evidence. In disregarding T.S.'s uncontradicted testimony she had no subjective apprehension of immediate physical injury, the principal opinion relies on objective circumstantial evidence to support the conviction, such as Stewart discharging the gun twice and making threats to T.S. and her overnight guest as he left the residence. I believe the principal opinion's reliance on this evidence incorrectly applies an objective standard when reviewing the evidence despite recognizing J.D.B. requires evidence of the victim's subjective apprehension of immediate physical injury.
An objective standard is a "legal standard that is based on conduct and perceptions external to a particular person." BLACK'S LAW DICTIONARY 1624 (10th ed. 2014). An objective standard contrasts with a subjective standard, which is defined as a "legal standard that is peculiar to a particular person and based on the person's individual views and experiences." Id. ; see also Mantia , 529 S.W.3d at 809.
There is little doubt an objective, reasonable juror may well feel an apprehension of immediate physical injury if placed in T.S.'s position during Stewart's confrontation or under the circumstances of J.D.B. However, the law does not require proof of what an objective person would apprehend under those circumstances. Instead, J.D.B. requires proof of the victim's subjective apprehension, which is to say T.S.'s peculiar, *539 individual views and experiences. At best, as T.S. explicitly stated, she was startled and possibly concerned about Stewart's actions, but denied she was fearful or afraid of Stewart.
I am mindful domestic assault victims may be reluctant to testify or express the necessary subjective state of mind to provide sufficient evidence to support a third-degree domestic assault charge. Hence, I do not believe the victim's testimony is the only way to prove his or her subjective apprehension of immediate physical injury. In Schumer v. Lee , 404 S.W.3d 443, 449 (Mo. App. W.D. 2013), the court of appeals found sufficient evidence to discipline a police officer for committing third-degree assault-despite the victim not testifying at the disciplinary hearing-by relying on a second officer's testimony about the incident. Id. at 450. Similarly, in State v. M.L.S. , 275 S.W.3d 293, 298-99 (Mo. App. W.D. 2008), the court of appeals found sufficient evidence to support a finding the victim was placed in apprehension of immediate physical injury to convict the defendant of third-degree domestic assault despite the victim stating, "Everything's fine. Not a big deal" and she was not upset at the time of the incident. In that case, there was testimony from a neighbor who heard part of the dispute, called the police, and witnessed the victim immediately after the incident, observing the victim's face was red and she seemed scared. Id. at 298. The officer who responded to the scene testified the victim told the officer when the defendant approached her, she felt threatened by him and had to push him away. Id. at 299.
In this case, T.S.'s uncle, grandmother, and overnight guest were all present in the residence when this incident occurred. None of them testified. Further, the police were called to the residence many hours later, at which time they collected forensic evidence concerning the gunshots. The officer who testified at trial provided no evidence whatsoever regarding T.S.'s appearance, state of mind, or any other observation indicating she had a subjective apprehension of immediate physical injury. The only subjective evidence presented regarding T.S.'s subjective apprehension was her own testimony, which flatly denied any fear of Stewart. What remains is minimal objective evidence a reasonable person could find caused an apprehension of immediate physical injury, which is not what the law requires. Based on the paucity of the record, I believe the state presented insufficient evidence from which reasonable jurors could find Stewart committed third-degree domestic assault beyond a reasonable doubt. I would vacate the judgment of Stewart's conviction for third-degree domestic assault.
Burglary
Section 569.160.1(3) provides a person commits first-degree burglary:
[I]f he [or she] knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure ... [t]here is present in the structure another person who is not a participant in the crime.
"[A] person 'enters unlawfully or remains unlawfully' in or upon premises when he [or she] is not licensed or privileged to do so." Section 569.010(8).
Stewart was charged with knowingly remaining unlawfully after entering the residence for the purpose of committing third-degree domestic assault. Because I believe there was insufficient evidence to support the third-degree domestic assault herein, the burglary conviction cannot be supported as charged and instructed.
I agree with the principal opinion's finding the state presented sufficient evidence *540 Stewart knowingly remained unlawfully within the residence after T.S. instructed him multiple times to leave. Section 569.140.1 provides a person commits first-degree trespass when "he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure or upon real property." First-degree trespass is a "nested" lesser-included offense to first-degree burglary. State v. Smith , 522 S.W.3d 221, 225 (Mo. banc 2017). Because it is impossible to commit first-degree burglary without also necessarily committing first-degree trespass, there was a basis in the evidence to convict Stewart of first-degree trespass. Id . I would reverse Stewart's conviction for first-degree burglary and remand the cause for entry of judgment for first-degree trespass and resentencing.
Conclusion
Based on the foregoing, I would vacate the judgment of Stewart's conviction for third-degree domestic assault. I would reverse Stewart's conviction for first-degree burglary and remand the cause for entry of judgment for conviction of first-degree trespass and resentencing.

All statutory citations are to RSMo Supp. 2014. Section 565.074 and § 569.160 were amended effective January 1, 2017. The statutory amendments do not apply because Stewart committed the assault and burglary at issue in 2015.

This Court has jurisdiction pursuant to Article V, section 10 of the Missouri Constitution.

Section 565.074 provides:
1. A person commits the crime of domestic assault in the third degree if the act involves a family or household member, including any child who is a member of the family or household, as defined in section 455.010 and:
* * *
(3) The person purposely places such family or household member in apprehension of immediate physical injury by any means.

The dissent argues T.S.'s subjective apprehension of immediate physical injury cannot be inferred from the "objective" circumstances of the case. T.S., however, testified she was startled, demanded that Stewart leave, and acknowledged she could have been injured by Stewart's gunfire.

When determining whether there is sufficient evidence to affirm a criminal conviction, every case turns on its own record. Drawing analogies to lower court decisions is often unhelpful because even superficially similar cases involve unique facts and credibility determinations. The dissent's reliance on J.D.B. and references to State v. M.L.S. , 275 S.W.3d 293 (Mo. App. 2008), is not persuasive. The dissent's reliance on J.D.B. illustrates this problem because the similarity between this case and J.D.B. begins and ends with the fact the victim in each case testified she was not placed in subjective apprehension of immediate physical injury. The juvenile defendant in J.D.B. made crude sexual overtures while wielding a plastic toy. The witness testified she thought it was a Halloween prank and knew the defendant could do nothing to her because she was in her locked car. J.D.B. , 2 S.W.3d at 152-53. In contrast, T.S. was confronted in her home by her angry, gun-wielding ex-husband who was threatening to kill her and her male friend. Unlike the witness in J.D.B. , T.S. testified she was "startled" when Stewart discharged the gun and described her defensive reactions to the assault by testifying she forcefully told Stewart to leave and moved to shut the door behind him. Respectfully, the fact the court of appeals reversed the conviction in J.D.B. has no bearing on the disposition of this case.

In pertinent part, § 569.160.1(3) provides:
1. A person commits the crime of burglary in the first degree if he knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, he or another participant in the crime:
* * *
(3) There is present in the structure another person who is not a participant in the crime.

In State v. Hill , 497 S.W.3d 391, 393-94 (Mo. App. 2016), the court of appeals employed essentially the same analysis to hold § 569.140, defining criminal trespass, "does not explicitly rule out the possibility of the owner of the property being charged ... if it is determined that he or she has ... remained upon it unlawfully."

Stewart's conviction for third-degree domestic assault is consistent with his burglary convictions. Stewart's assault conviction was based on a finding T.S. was a "household member." A "household member" includes a "former spouse" and persons who have "resided together in the past." Therefore, the fact T.S. was a "household member" does not mean Stewart retained a license or privilege to remain in the residence.

All statutory references are to RSMo Supp. 2014.