

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,                          )
                                            )
    Plaintiff-Respondent,           )
                                            )
vs.                                         )          No. SD37086
                                            )
JORDAN C. HADEN,                            )          **Filed: August 3, 2022**
                                            )
    Defendant-Appellant.            )

APPEAL FROM THE CIRCUIT COURT OF WRIGHT COUNTY

The Honorable Elizabeth A. Bock, Special Judge

**<u>AFFIRMED</u>**

Following a change of venue from Ozark County to Wright County, Jordan C.

Haden ("Defendant") was ultimately charged by a third amended information with (1)

assault in the first degree of a law enforcement officer, Missouri State Highway Patrol

Corporal Daniel J. Johnson ("Corporal Johnson"), by striking him in the face (Count I),

and (2) felony resisting arrest for assault in the first degree "by fleeing from" Corporal

Johnson (Count II).[1] The third amended information also alleged Defendant was "a

---

[1] Defendant was not charged with driving while intoxicated though Corporal Johnson told

Defendant he was under arrest for driving while intoxicated immediately before Defendant

1

persistent misdemeanor offender" based on four misdemeanor convictions from North Dakota and Arkansas.

A jury found Defendant guilty of the lesser included offense of assault in the second degree of a law enforcement officer and felony resisting arrest. Based on the trial court's finding beyond a reasonable doubt that Defendant was a persistent misdemeanor offender, the trial court (rather than the jury) sentenced Defendant to 15-years imprisonment for assault in the second degree of a law enforcement officer and four-years imprisonment for resisting arrest to run concurrent to the 15 years.[2] Defendant appeals raising two points: (1) the evidence was insufficient to prove beyond a reasonable doubt Corporal Johnson "was making an arrest of [Defendant] for the felony of assault in the first degree" in that the evidence showed Corporal Johnson "was making an arrest of [Defendant] for misdemeanor driving while intoxicated"; and (2) the trial court "plainly erred" in determining Defendant was a persistent misdemeanor offender and "removing sentencing from the jury" because only one of the four alleged misdemeanor convictions from North Dakota and Arkansas was a qualifying prior and status as a persistent misdemeanor offender requires at least two qualifying priors.[3] We deny both of Defendant's points and affirm the trial court's judgment.

---

punched Corporal Johnson in the face, and Defendant was "process[ed]" "for driving while intoxicated" on arrest.

[2] At a pretrial hearing on January 10, 2020, Defendant requested "jury sentencing."

[3] Defendant does not challenge the jury's verdict finding him guilty of assault in the second degree of a law enforcement officer; rather, Defendant challenges only the removal of sentencing for this offense from the jury.

**Facts and Procedural Background**

*Procedural Background*

On July 10, 2020, the State filed a second amended information that alleged for the first time Defendant was a persistent misdemeanor offender. Status as a persistent misdemeanor offender precludes sentencing by a jury. Sections 557.036.4(2) and 558.016.5.[4] At a pretrial hearing that same day, the trial court admitted documents establishing Defendant had four misdemeanor convictions – two from North Dakota and two from Arkansas. The convictions, date of guilty pleas and imposition of sentences, and places were: (1) on February 3, 2012, Defendant pled guilty to "the charge of Drove Or In Actual Physical Control Of Motor Vehicle" while under the influence of an intoxicating liquor and/or any drug, a Class B Misdemeanor, in Wells County, North Dakota (sentence was imposed on February 10, 2012); (2) on August 29, 2012, Defendant pled guilty "to the charge of Driving While License Privilege Is Suspended," a Class B Misdemeanor, in January 2012, in Ward County, North Dakota (sentence also imposed on August 29, 2012); (3) on December 22, 2015, Defendant was found guilty after a plea of "NC" to "(1st) Driving On Suspended DL" in July 2015, in Baxter County, Arkansas; and (4) on May 24, 2018, Defendant was found guilty after a plea of "NC" to "(2nd) Driving On Suspended DL" in December 2016, in Baxter County, Arkansas.

The following colloquy between the trial court and defense counsel occurred in connection with the filing of the second amended information:

> THE COURT: . . . Okay. First of all, we have a little housekeeping.
> First of all, the State has filed a substitute information. [Defense Counsel],
> do you have any objection?

---

[4] All statutory references are to RSMo (2016), unless otherwise indicated.

[Defense Counsel]: Your Honor, I would like to object, but, unfortunately, I don't think that there's anything I can object on.

THE COURT: So the difference is, is the prior and -- the prior convictions; is that correct?

[Defense Counsel]: Yes, Your Honor. The prior misdemeanor convictions.

. . . .

THE COURT: Okay. I'm looking at State's Exhibit No. 1 [February 3, 2012 North Dakota conviction]. It appears to be certified and exemplified for an out-of-state conviction. Is there any objection?

[Defense Counsel]: No, Your Honor.

THE COURT: I'm looking at State's Exhibit No. 2 [August 29, 2012 North Dakota conviction]. It appears to be certified and exemplified for an out-of-state conviction. Is there an objection?

[Defense Counsel]: No.

THE COURT: Okay. I'm looking at State's Exhibit No. 3 [Arkansas convictions]. It also is a certified and exemplified record of conviction which is required for an out-of-state conviction. Is there an objection?

[Defense Counsel]: No, Your Honor.

THE COURT: Okay. Is there anything you wish to add, [Defense Counsel]?

[Defense Counsel]: No, Your Honor.

THE COURT: The Court makes a finding that the Defendant, Mr. Haden, is a prior and persistent misdemeanor offender under Section 558.016 beyond a reasonable doubt, and that would, if he's convicted, take sentencing away from the jury.

The allegation that Defendant was a persistent misdemeanor offender also was included in the third amended information on which Defendant was tried.

4

*Trial*

The trial occurred on December 3 and 4, 2020. Viewed in accordance with our standard of review, the evidence at trial showed the following facts. About 10:45 p.m., on December 2, 2017, Corporal Johnson was in uniform and on routine patrol in his "fully marked Dodge Charger" in Gainesville. As Corporal Johnson was traveling north on Highway 5, he noticed a Mustang traveling west on First Street and then turning north on Elm Street. Corporal Johnson did not observe a front license plate on the Mustang and, on getting behind the Mustang, noticed that the rear license plate "didn't look right. It was not reflecting as plates usually do, and it appeared to be flimsy, like it was flopping." Corporal Johnson subsequently noticed the Mustang backing in south of The Antler. The Antler was a restaurant/bar for which the "primary services" at that time of the evening were "[a]dult beverages." Defendant exited the Mustang and Corporal Johnson stopped next to it. Corporal Johnson told Defendant that he believed Defendant had a registration violation. Corporal Johnson and Defendant went to the rear of the Mustang, and Corporal Johnson "observed a temporary Missouri license plate with . . . writing on the back with permanent marker." Corporal Johnson had not seen "temporary plates in that style" before or since seeing the Mustang.

Corporal Johnson requested Defendant accompany him to his patrol vehicle so Corporal Johnson could check the registration. While Defendant was sitting in the patrol vehicle with Corporal Johnson, Corporal Johnson "detected the faint odor of alcohol emitting from" Defendant. On inquiry, Defendant said "he had consumed alcohol" at The Antler earlier, left to get cigarettes at a gas station, and was returning to the Antler.

Corporal Johnson's patrol vehicle had two cameras – a forward-facing camera that films through the front glass and a rear-facing camera located near the rearview mirror that films inside the vehicle as well as outside the back glass. Corporal Johnson turned on the cameras after noting the "odor of alcohol" and Defendant's "bloodshot eyes." At that point, the nature of Corporal Johnson's investigation changed as he was able to confirm that the registration was a valid registration. An audio/video recording of the film from the cameras that shows "some" of Corporal Johnson's "contact" with Defendant that evening was played for the jury. Corporal Johnson conducted a horizontal gaze nystagmus test while Defendant was seated in the patrol vehicle and then took Defendant to the rear of the patrol vehicle for two walking field sobriety tests. Based on these tests, Corporal Johnson "formed [the] opinion" that Defendant was intoxicated.

Corporal Johnson then asked Defendant to provide a breath sample for a preliminary breath test, and Defendant asked if he could wait. At that point, Corporal Johnson told Defendant he was under arrest for driving while intoxicated, then "turned to [his] left and placed [his] Preliminary Breath Tester on the rear of [his] patrol vehicle, turned around to face [Defendant], and got sucker punched in the left side of [his] face." Following the punch, Defendant ran, and, despite the fact Corporal Johnson's "jaw hurt very bad and [he] felt dazed," Corporal Johnson pursued Defendant. Audio from Corporal Johnson's belt microphone recorded during the chase was played for the jury.

After pursuing Defendant to the north side of The Antler and through a guardrail, Corporal Johnson tased Defendant causing Defendant to "fall[] to the ground on his stomach." At that point, Corporal Johnson "was feeling really bad," his "jaw hurt really bad," and he noticed Defendant "had a pocketknife in his pocket" so he did not approach

6

Defendant and was trying to wait until backup arrived. Defendant "partially turned over to look" at Corporal Johnson, and Corporal Johnson told Defendant to "[r]oll over." Corporal Johnson "repeatedly" "commanded [Defendant] to stay on the ground." A short time later, Corporal Johnson "observed [Defendant] reach down with his hand close to where one of [the taser] probes was." Knowing that if Defendant was able to pull one of the probes out the "taser would be useless," Corporal Johnson attempted to deploy the second and last set of probes in his taser, but inadvertently hit the trigger because he was "dazed" and shot the second set of taser probes into the ground and transferred the electricity from Defendant to the second set of probes in the ground. That permitted Defendant "to get up and continue[] to run away from [him]."

Corporal Johnson again caught up to Defendant, and applied pepper spray to Defendant's face. Though Defendant can be heard coughing, he continued to run. Corporal Johnson never "pull[ed his] service weapon," but "[t]hat was all [he] had left."

Shortly after that time, backup arrived and Defendant was taken into custody. Corporal Johnson processed Defendant "for driving while intoxicated."

Later, at the hospital emergency room, Corporal Johnson "had a lot of pain in [his] jaw and ringing in [his] left ear." Corporal Johnson was informed that his jaw was broken. Subsequently, a maxillofacial specialist performed surgery to wire and then "rubber band[]" Corporal Johnson's jaws shut for eight weeks. While the wires were in place, Corporal Johnson wore a "wire cutter" on a loop around his neck so he could cut the wires to avoid aspirating in the event he vomited. During the eight-week period his jaws were held closed, Corporal Johnson blended his food and then injected the food into the back of his mouth through a hose. Corporal Johnson still had "numb teeth" near "the

lower break" at the time of the trial, and also had a root canal and crown placed on an upper tooth as well as orthodontic work that required the removal of two wisdom teeth. Corporal Johnson also incurred an "[i]nternal brain injury" that caused him "[m]emory issues, divided attention issues" and loss of "temper a lot easier." Corporal Johnson "still ha[d] some of those symptoms" at the time of trial. Corporal Johnson believed he has "[m]ild cognitive impairment" and also has "a constant annoying ringing" in his left ear called tinnitus. Corporal Johnson's injuries prevented him from returning to work for approximately six months.

Following Corporal Johnson's testimony, the State rested. Defendant chose not to testify and only called a single witness, an investigator for the State public defender's office.

In her opening statement and closing argument, defense counsel acknowledged Defendant punched Corporal Johnson and then ran. Defendant did not object to any of the instructions to the jury, or request any jury instruction that was refused.

The jury found Defendant guilty of (1) the lesser included offense of assault in the second degree of a law enforcement officer and (2) resisting arrest for assault in the first degree. The trial court sentenced Defendant to 15-years imprisonment on the lesser included assault in the second degree of a law enforcement officer and four-years imprisonment on Count II to run concurrent to the 15-year sentence.[5]

---

[5] The maximum term of imprisonment for assault in the second degree of a law enforcement officer was 15 years, and four years for resisting arrest for a felony. Sections 565.052.1(3) and .3; 565.002(14)(a), RSMo Supp. 2017; 575.150.1(1) and .5(1); and 558.011.1(2) and (5).

8

**Analysis**

*Point 1 – Evidence Was Sufficient to Permit a Reasonable Juror to Find Beyond a Reasonable Doubt that Corporal Johnson Was Arresting Defendant for Assaulting Corporal Johnson*

In his first point, Defendant asserts the evidence was insufficient to "prove beyond a reasonable doubt that [Corporal] Johnson was making an arrest of [Defendant] for the felony of assault in the first degree" "in that the evidence adduced at trial showed that [Corporal] Johnson was making an arrest of [Defendant] for misdemeanor driving while intoxicated." We disagree, and reject Defendant's first point.

Standard of Review

"When considering the sufficiency of the evidence on appeal, this Court must determine whether sufficient evidence permits a reasonable juror to find guilt beyond a reasonable doubt." *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018) (internal quotations omitted). "The evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Id.*

*State v. Hollowell*, 643 S.W.3d 329, 341 (Mo. banc 2022).

Applicable Legal Principles

In relevant part, section 575.150, RSMo Supp. 2017, provides:

1. A person commits the offense of resisting . . . arrest . . . if he or she knows or reasonably should know that a law enforcement officer is making an arrest . . ., and for the purpose of preventing the officer from effecting the arrest, . . . he or she:

    (1) Resists the arrest . . . of such person by using or threatening the use of violence or physical force or by fleeing from such officer . . . .

    . . . .

5. The offense of resisting . . . an arrest is a class E felony for an arrest for a:

    (1) Felony . . . [.]

9

Our Supreme Court discussed in depth and clarified the elements of resisting

arrest for a felony (specifically in the context of resisting arrest for the offense of

"attempting to assault a law enforcement officer") in *State v. Shaw*, 592 S.W.3d 354, 361

(Mo. banc 2019). In doing so, the Court stated:

> [Section 575.150.5(1)] requires the State to establish the arrest initiated by the arresting officer and resisted by the defendant was "for a felony."
>
> . . . .
>
> Determining whether a particular offense is a felony is purely a question of law, and the term "felony" as used in § 575.150.5(1) means an offense that constitutes a felony as a matter of law.
>
> . . . .
>
> The Court must next discern what it means to resist an arrest "for" a felony. There is no statutory definition for the term "for" as used in the phrase "for a felony" in § 575.150.5(1). When a term is not defined by statute, this Court will give the term its "plain and ordinary meaning as derived from the dictionary." *Mo. Pub. Serv. Comm'n v. Union Elec. Co.*, 552 S.W.3d 532, 541 (Mo. banc 2018). Webster defines the word "for" to mean, in relevant part, "because of" and "on account of." Webster's New Int'l Dictionary 886 (3d ed. 2002). . . .
>
> . . . .
>
> Section 575.150.5(1) enhances resisting arrest to a felony when law enforcement makes an arrest "for a felony." In light of the plain meaning of the term "for" set out above and the fact that all felonies are criminal offenses, the State must present sufficient evidence to support a factual finding beyond a reasonable doubt the defendant was arrested "because of" or "on account of" an offense to support a conviction of felony resisting arrest. But whether the offense for which the defendant was arrested is actually a criminal offense that constitutes a felony under Missouri law is purely a question of law, which is up to the courts, not the factfinder, to determine.
>
> . . . .
>
> Section 575.150.5(1) requires the State to establish that the arresting officer effectuated an arrest "because of" or "on account of" an offense that

constitutes a felony as a matter of law. The text of the statute does not require inquiry into the arresting officer's subjective reasons for initiating the arrest. In fact, nothing in § 575.150.5(1) requires evidence of the arresting officer's subjective state of mind at any point during the arrest. *See State v. Hopson*, 168 S.W.3d 557, 562 (Mo. App. 2005) (affirming a conviction of felony resisting arrest without testimony from the arresting officer as to the offense that prompted him to initiate the arrest). Nor does § 575.150.5(1) require the State to produce evidence of the arresting officer's subjective understanding of the specific offense prompting the arrest or evidence of the officer's belief as to whether the offense constituted a felony or misdemeanor. Rather, all § 575.150.5(1) requires the State to establish to the factfinder is the defendant resisted an officer's attempt to effectuate an arrest for an offense. It is then up to the court, not the factfinder, to determine whether the offense constitutes a felony as a matter of law. Section 575.150.5(1) requires evidence of an offense and a nexus between the offense and the arresting officer's attempt to make an arrest. This showing does not require evidence of the arresting officer's subjective understanding of the offense that prompted the officer to effectuate the arrest.

Although § 575.150.5(1) does not require the State to present evidence that the arresting officer subjectively intended to arrest a person for a felony offense, this is not to say the arresting officer's subjective intent for effectuating an arrest is irrelevant. To the contrary, such evidence is relevant and may be sufficient to support a conviction of felony resisting arrest pursuant to § 575.150.5(1). But this is not because the officer's subjective intent for effectuating an arrest has any bearing on whether the defendant's act of resisting arrest should be a felony or a misdemeanor. Rather, the officer's subjective intent is relevant because this evidence explains what prompted the officer to make the arrest and, therefore, aids the factfinder in determining whether the defendant was arrested "because of" or "on account of" an offense.

. . . .

Furthermore, the standard of review on appeal of a judgment of conviction challenging the sufficiency of the evidence presented at trial does not permit an appellate court to weigh the evidence nor consider evidence and inferences contrary to the verdict. For this reason, even if the record contains evidence that could support a finding that the defendant was arrested for multiple offenses, some of which may not necessarily constitute felonies as a matter of law, an appellate court is bound by the standard of review to affirm a conviction of felony resisting arresting because the record contains evidence to support a finding beyond a reasonable doubt that a law

11

enforcement officer arrested the defendant "on account of" or "because of" an offense that constitutes a felony as a matter of law.[6]

*Id.* at 358, 359-61, 365 (footnotes and a citation omitted). In footnotes, the Court made clear that section 575.150.5(1) does not require "a person to be charged with or convicted of a felony to support a conviction of felony resisting arrest," and the person can even be acquitted of the underlying offense. *Id.* at 359 n.9, 361 n.12.

<u>Discussion</u>

The jury was instructed that, in order to find Defendant guilty of resisting arrest under Count II, the jury must find beyond a reasonable doubt that (1) Corporal Johnson "was a law enforcement officer," (2) Corporal Johnson "was making an arrest of . . . [D]efendant for assault in the first degree," (3) "[D]efendant knew or reasonably should have known that a law enforcement officer was making an arrest," and (4) "[D]efendant resisted [the arrest] by fleeing from" Corporal Johnson.

Defendant challenges only the sufficiency of the evidence to permit a reasonable juror to find the second element that Corporal Johnson "was making an arrest of . . . [D]efendant for assault in the first degree" claiming that the evidence "showed . . . [Corporal] Johnson was making an arrest . . . for misdemeanor driving while intoxicated." As *Shaw* instructs, though perhaps some evidence could support a finding that Defendant was arrested for multiple offenses including driving while intoxicated (potentially a misdemeanor), that evidence and supporting inferences are contrary to the

---

[6] The Court in *Shaw* also seemed to indicate that, where a defendant resists arrest for multiple offenses, the resistance is a felony so long as at least one of the offenses for which arrest was resisted is a felony. *See Shaw*, 592 S.W.3d at 362, 361-62 ("Section 575.150.5(1) enhances resisting arrest to a felony if the arrest is 'for a felony,' not if the arrest is **only** for a felony.") (emphasis in original).

jury's verdict and may not be considered under our standard of review. The evidence that (1) Defendant did not flee from Corporal Johnson until *after* Defendant punched Corporal Johnson in the face with sufficient force to break Corporal Johnson's jaw, and continued to flee Corporal Johnson even after Corporal Johnson tased and maced him, as well as the evidence of (2) the significantly more serious nature of the assault than the suspected driving while intoxicated, was clearly sufficient to permit a reasonable juror to find beyond a reasonable doubt that Corporal Johnson was arresting Defendant on account of Defendant's assault of Corporal Johnson, and that Defendant resisted that arrest by fleeing from Corporal Johnson.

Defendant's first point is denied.

*Point II – Defendant's February 2012 North Dakota Conviction for the Offense of Driving While Under the Influence and December 2015 Arkansas Conviction for the Offense of Driving While License Was Suspended Are Classified as A or B Misdemeanors Under Missouri Law for Purposes of Making Defendant a Persistent Misdemeanor Offender*

In his second point, Defendant claims the trial court "plainly erred" in determining Defendant was "a persistent misdemeanor offender" and "removing sentencing from the jury" because only one of the four alleged misdemeanor convictions from North Dakota and Arkansas was a qualifying prior finding of guilt and status as a persistent misdemeanor offender requires at least two qualifying prior findings of guilt.

<u>Standard of Review</u>

The threshold issue in plain error review is whether the trial court's error was facially "evident, obvious, and clear." *State v. Wood*, 580 S.W.3d 566, 579 (Mo. banc 2019) (citation omitted).[7] If there was evident error, only

---

[7] "All prejudicial error is not plain error, and plain errors are only those which are evident, obvious, and clear." ***State v. Baumruk***, 280 S.W.3d 600, 608 (Mo. banc 2009) (internal quotations and alterations omitted).

13

then will this Court consider whether that error "resulted in a manifest injustice or miscarriage of justice." *Id*. To obtain a new trial on direct appeal based on a claim of plain error, the defendant must show that the error was "outcome determinative." *Id*.; *State v. Baxter*, 204 S.W.3d 650, 652 (Mo. banc 2006). An appellate court should not engage in plain error review pursuant to Rule 30.20, unless the defendant meets his or her burden of establishing facially substantial grounds for believing that the alleged error resulted in a manifest injustice or miscarriage of justice. *[State v.] Brandolese*, 601 S.W.3d [519,] 525-26 [(Mo. banc 2020)]; *State v. Pulliam*, 606 S.W.3d 243, 245 (Mo. App. 2020).

*State v. Soliben*, 621 S.W.3d 585, 593 (Mo. App. S.D. 2021); *see also* Rule 30.20, Missouri Court Rules (2022).

### Applicable Legal Principles

Section 557.036 provides in relevant part:

> . . . .
>
> 2. Where an offense is submitted to the jury, the trial shall proceed in two stages. At the first stage, the jury shall decide only whether the defendant is guilty or not guilty of any submitted offense. The issue of punishment shall not be submitted to the jury at the first stage.
>
> 3. If the jury at the first stage of a trial finds the defendant guilty of the submitted offense, the second stage of the trial shall proceed [before the jury]. The issue at the second stage of the trial shall be the punishment to be assessed and declared. . . . The jury shall assess and declare the punishment as authorized by statute.
>
> 4. A second stage of the trial shall not proceed and the court, and not the jury, shall assess punishment if:
>
> . . . .
>
> (2) The state pleads and proves the defendant is a prior offender, persistent offender, dangerous offender, or persistent misdemeanor offender as defined in section 558.016, or a persistent sexual offender or predatory sexual offender as defined in section 566.125. . . .
>
> 5. If the jury returns a verdict of guilty in the first stage and declares a term of imprisonment in the second stage, the court shall proceed as provided in subsection 1 of this section except that any term of imprisonment imposed cannot exceed the term declared by the jury unless the term declared by the

14

jury is less than the authorized lowest term for the offense, in which event the court cannot impose a term of imprisonment greater than the lowest term provided for the offense.

Section 558.016 further provides in relevant part:

1. The court may sentence a person who has been found guilty of an offense to a term of imprisonment as authorized by section 558.011 or to a term of imprisonment authorized by a statute governing the offense if it finds the defendant is a prior offender or a persistent misdemeanor offender. . . .

. . . .

5. A "**persistent misdemeanor offender**" is one who has been found guilty of two or more offenses, committed at different times that are classified as A or B misdemeanors under the laws of this state.

6. The findings of guilt shall be prior to the date of commission of the present offense.

<u>Discussion</u>

Defendant does not challenge the trial court's determination that Defendant's February 2012, Wells County, North Dakota conviction for the offense of driving while under the influence is classified as an A or B misdemeanor under Missouri law. Further, the State concedes that Defendant's May 24, 2018, Baxter County, Arkansas conviction for the offense of driving while license was suspended was not eligible for consideration by the trial court because, under section 558.016.6, the finding of guilt was significantly after (not "prior to") the date of the present offenses on December 2, 2017. The State also concedes Defendant's August 2012, Ward County, North Dakota conviction for the offense of driving while license was suspended, standing alone as a first offense of driving while license was suspended, is not classified as an A or B misdemeanor under Missouri law.

15

However, the State argues that, in light of Defendant's 2012, North Dakota conviction for the offense of driving while license was suspended, Defendant's December 2015, Baxter County, Arkansas conviction for the offense of driving while license was suspended (a first offense of driving while license was suspended in Arkansas) is classified under Missouri law as a conviction for a "second . . . violation" of section 302.321 – driving while revoked – for the purpose of determining whether Defendant is a persistent misdemeanor offender under section 558.016.5.  Defendant did not address this argument in his brief and did not file a reply brief.  The State's interpretation of section 558.016.5, if correct, precludes this Court finding an evident, obvious, and clear error required for plain error review.

Since at least August 27, 2011, a second violation of section 302.321 has been a class A misdemeanor.  Section 302.321.2, RSMo Cum.Supp. 2011 and RSMo (2016).  As a result, the trial court did not err, let alone plainly err, in finding beyond a reasonable doubt that Defendant was a persistent misdemeanor offender under section 558.016.5 because he had "been found guilty of two or more offenses, committed at different times that are classified as A or B misdemeanors under the laws of" Missouri (i.e., Defendant's 2012 conviction for driving while under the influence, and Defendant's 2015 conviction for driving while license was suspended that is classified as a second violation of Missouri's driving while revoked statute for purposes of section 558.016.5).

Defendant's second point is denied, and the trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

DON E. BURRELL, J. –  CONCURS

GARY W. LYNCH, S.J. – CONCURS

16